UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDWARD DONALD BURLEY,

                Plaintiff,                  Case No. 1:22-cv-628

v.                                        Honorable Jane M. Beckering

D. WELLER et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought under 42 U.S.C. § 1983 by a former state prisoner, who was incarcerated at the time that he initiated this action. While Plaintiff was incarcerated, he paid the full filing fee in this action.[1]

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. FED. R. CIV. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined all named Defendants *except* Defendants Weller and Nalley.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C.

---

[1] Because Plaintiff was incarcerated when he initiated this action, the action is subject to preliminary review pursuant in 28 U.S.C. § 1915A. *See Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281, 1282 (9th Cir. 2017) (holding that "28 U.S.C. § 1915A applies only to claims brought by individuals incarcerated *at the time they file* their complaints" (emphasis added)).

§ 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, as detailed below, the Court will partially dismiss Plaintiff's complaint for failure to state a claim. Further, the Court will deny without prejudice Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.4) and motion for preliminary injunction (ECF No. 5), and will grant Plaintiff's motion to supplement (ECF No. 6).

## Discussion

### I.   Factual Allegations

At the time that Plaintiff initiated this action, he was incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility (SMT) in Jackson, Jackson County, Michigan. Subsequently, after initiating this action, Plaintiff was released from incarceration. The events about which he complains occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan, as well as at several other correctional facilities where Plaintiff was subsequently incarcerated, including the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan, and SMT. Plaintiff sues the MDOC and Corizon Health Inc., as well as the following individuals:[2] Correctional Officer D. Weller, Correctional Officer Unknown Nalley, Assistant Deputy Warden (ADW) Unknown Clouse, Assistant Residential Unit Manager Unknown McCary, Assistant Resident Unit Specialist (ARUS) Unknown Johnson, Warden Unknown Parish, Correctional Officer Unknown Austin, Correctional Officer Unknown Ratliff, ARUS Unknown McColl, Americans With Disabilities Act (ADA) Coordinator Unknown Smith,

---

[2] Due to the manner in which Plaintiff provided Defendants' names and addresses in the complaint, when listing the named Defendants, the Court does not identify the correctional facility at which each Defendant worked.

2

ARUS Unknown Erway, Medical Records Supervisor L. Willingham, Resident Unit Manager Unknown Haske, Dr. Robert Crompton, Hearing Investigator Unknown Goodspeed, Chaplain Pelky, Chaplain Steve Adamson, Correctional Officer Unknown Brown, Registered Nurse (RN) Lori Blanchard, Food Service Director J. Tunell, Deputy Director Kenneth McKee, Chaplain Unknown Duby, Chaplain Unknown Cheney, Food Service Director Unknown Gauthier, Chaplain K. Pelky, Correctional Officer Unknown Ogden, RN Unknown Doolittle, Licensed Practicing Nurse Joleane Tribble, Correctional Officer Unknown Fralick, Correctional Officer Unknown Sisson, Correctional Officer Unknown LaFlure, ARUS Unknown Simon, Correctional Officer Unknown Betcke, Correctional Officer Unknown Normington, Warden J. Davids, ADW Unknown Traylor, ADW Unknown Davis, ADA Coordinator C. Guilford, Correctional Officer Unknown Richardson, Correctional Officer Unknown Coant, G/C T. Ryder, Dr. Unknown Erickson, G. Adams-Woods, Jeffrey Bomber, Sergeant B. Moore, and Sergeant Unknown Delacruz. (Compl., ECF No. 1, PageID.1–2, 5–11.)

In Plaintiff's complaint, he alleges that on December 17, 2019, he told Defendant Weller that he "feared for [his] safety as [his] cellmate, Michael Johnson[,] . . . had just struck [him] in the face and side of [the] head, and had threatened [Plaintiff's] life if [Plaintiff] returned back to the cell." (*Id.*, PageID.12.)[3] Defendant Weller ordered Plaintiff "to lock down" in his cell with inmate Johnson, but Plaintiff refused to do so. (*Id.*) Defendant Weller then "commissioned [Defendant] Nalley to place [Plaintiff] in handcuffs and transport [him] to punitive segregation for disobeying a direct order." (*Id.*) Plaintiff claims that "the order [Defendant Weller] allegedly gave [Plaintiff] was an unlawful order to lock in a secure cell with a person (Johnson) who had just assaulted [Plaintiff]." (*Id.*) Plaintiff was issued a class II misconduct ticket for disobeying a direct

---

[3] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's filings.

order, "which was elevated to a class I major misconduct at the time of review." (*Id.*) Later in the complaint, Plaintiff describes the misconduct that Defendant Weller issued on December 17, 2019, as a "false ticket . . . for disobeying a direct order where [Plaintiff] could not clearly hear what [Defendant Weller] was saying or trying to communicate with [Plaintiff]." (*Id.*)

After Plaintiff was sent to segregation for disobeying a direct order misconduct, Defendant Weller issued Plaintiff a "false [class I] misconduct for possessing dangerous contraband" for having white-out solution, which was found when Plaintiff's property was packed up. (*Id.*, PageID.13; *see* ECF No. 1-3, PageID.45.) Plaintiff alleges that Defendant Nalley "illegally confiscated [Plaintiff's] religious and personal property out of retaliation for complaints/grievances that [Plaintiff] previously levied against him," and Plaintiff did not receive a "contraband hearing" for the seized items. (Compl., ECF No. 1, PageID.14.) Plaintiff also alleges that Defendant Nalley placed Plaintiff's property "in an unsecured area without proper custody and exposed said property to the prison population . . . or as an alternate theory planted dangerous contraband (white out solution) within [Plaintiff's] footlockers and/or duffle bags." (*Id.*)

Further, Plaintiff contends that Defendants Weller and Nalley conspired to have Plaintiff placed in segregation. (*Id.*, PageID.15.) Plaintiff remained in segregation for five days and received thirty days' loss of privileges. (*Id.*, PageID.13.) Plaintiff claims that "as a direct result of the assault [by inmate Johnson], [Plaintiff] sustained extensive injuries to [his] hearing aid as well as injuries to [his] face and side of head, elevated placement in a level 5 correctional facility, heightened anxiety, and other mental injuries." (*Id.*, PageID.12.)

Additionally, Plaintiff alleges that prior to December 17, 2019, he had informed Defendants Weller and McColl that "Johnson had made threats against [Plaintiff], however they did nothing about it and ordered Plaintiff to stay in the cell with [Johnson]." (*Id.*) Plaintiff also alleges that on some unspecified date, he was "held captive in [his] cell" when inmate Johnson

4

"covered the window [of their cell] with a towel and would not allow [Plaintiff] to push the emergency button." (*Id.*) Plaintiff states that he told Defendant Weller "of this fact as well when [Plaintiff] told [Defendant Weller] of the assault and threats." (*Id.*) Plaintiff claims that Defendant Weller "would separate other prisoners for just arguing with each other while in the protection unit," and Defendant Weller "discriminately and capriciously discriminated against [Plaintiff] by failing to follow ECF protocol" and acted with "deliberate indifference towards [Plaintiff's] health and safety" when he ordered Plaintiff to enter the cell with inmate Johnson. (*Id.*, PageID.13.)

Further, Plaintiff alleges that on an unspecified date, Defendant Weller issued Plaintiff a "false misconduct for stealing chicken out of the dining area where [Plaintiff] did not." (*Id.*, PageID.12.) Plaintiff states that another inmate, Olson, "admittedly took the chicken out of the chow hall and placed it on [Plaintiff's] cellmate's . . . locker without [Plaintiff's] assistance or knowledge." (*Id.*)

Plaintiff also alleges that Defendant Weller "constantly harassed, belittled, discriminated against [Plaintiff] by refusing to accommodate [Plaintiff] for [his] hearing disability, and would harass [Plaintiff] for eating on the Kosher diet (due to [Plaintiff's] Jewish affiliation), [and for] filing non-frivolous oral and written grievances as well as civil actions," and that Defendant Weller "would commission other custody staff to harass and discriminate against [Plaintiff] while [Plaintiff] was in the protection unit at Oaks." (*Id.*)

Plaintiff contends that "the false misconducts were issued by [Defendant] Weller due to the fact that [Defendant Weller] resented [Plaintiff] having hearing accommodations and the state having to install a video phone in the protection unit at Oaks." (*Id.*, PageID.13–14.) Plaintiff also contends that Defendant Weller "would make harassing gestures towards [Plaintiff] mimicking sign language in a derogatory and hostile manner." (*Id.*, PageID.14.) Plaintiff alleges that

Defendant Weller "would often deny [Plaintiff] access to the hearing amplifier (an approved accommodation) whenever [Plaintiff] would ask for it." (*Id.*, PageID.13.)

The remainder of the complaint details additional alleged constitutional violations that Plaintiff suffered during his incarceration over the next several years. Plaintiff's complaint contains no further allegations against Defendants Weller and Nalley.

As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.*, PageID.4.)

## II.   Misjoinder

### A.   Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." FED. R. CIV. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of

6

them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison

Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under the circumstances presented in Plaintiff's Complaint, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Weller is the first Defendant named in the action. (*See* Compl., ECF No. 1, PageID.1–2.).[4] In Plaintiff's complaint, he alleges that on December 17, 2019, he informed Defendant Weller that he had been physically assaulted by his cellmate. (*Id.*, PageID.12.) Defendant Weller ordered Plaintiff "to lock down" in his cell with inmate Johnson, and Plaintiff refused to do. (*Id.*) Defendant Weller then "commissioned" Defendant Nalley to transport Plaintiff to segregation for disobeying a direct order. (*Id.*) Plaintiff contends that Defendant Weller issued him a "false ticket" for disobeying a direct order, as well as a false misconduct ticket for possessing

---

[4] The analysis of joinder must start somewhere. By accepting the first-named Defendant and the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

dangerous contraband, after white-out solution was found when Plaintiff's property was packed up. (*Id.*) Plaintiff contends that Defendant Nalley was involved in packing up Plaintiff's property and that he confiscated Plaintiff's property in retaliation for prior grievances that Plaintiff had filed. (*Id.*)

Plaintiff's allegations against Defendants Weller and Nalley are transactionally related; however, as explained below, Plaintiff's allegations against Defendants Weller and Nalley are transactionally *unrelated* to Plaintiff's allegations against the remaining forty-six Defendants. Plaintiff contends that at some unspecified date prior to December 17, 2019, Plaintiff had informed Defendants Weller and McColl that "Johnson had made threats against [Plaintiff], [but] they did nothing about it . . . " and that on some unspecified date, several other Defendants failed to issue "a Special Problem Defender Notice (SPON)" against inmate Johnson. (*Id.*) However, such vague allegations, with no indication as to when the events occurred, are insufficient to show that these events are transactionally related to Plaintiff's claims against Defendants Weller and Nalley, which occurred on December 17, 2019. The fact that Plaintiff may reference inmate Johnson in his allegations against other Defendants is, on its own, insufficient to show that all such events relating to inmate Johnson arise out of the same transaction or occurrence. Further, it appears Plaintiff believes that all of the subsequent events set forth in the complaint—which apparently occurred during his remaining time in incarceration at ECF and at subsequent facilities where he was incarcerated from 2019 to 2022—occurred because of his interaction with Defendants Weller and Nalley on December 17, 2019. However, Plaintiff's belief that all subsequent events occurred simply because of his interaction with Defendants Weller and Nalley does not transform separate, subsequent events into events that arise out of the same transaction or occurrence. After all, in the prison context, any adverse incident experienced by a prisoner could be claimed to be retaliation for some prior incident; however, such incidents are not necessarily transactionally related.

Here, the events with the remaining forty-six Defendants, which occurred during Plaintiff's remaining time in incarceration at ECF and at subsequent facilities where Plaintiff was incarcerated from 2019 to 2022, are not transactionally related to Plaintiff's allegations against Defendants Weller and Nalley. Accordingly, the Court concludes that Defendants Weller and Nalley are properly joined because Plaintiff's claims against these Defendants arise out of the same transaction and occurrence. However, Plaintiff has improperly joined the remaining forty-six Defendants.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined forty-six Defendants to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." FED. R. CIV. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting

*Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop all named Defendants *except* Defendants Weller and Nalley because they are misjoined, and the Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."). If Plaintiff wishes to proceed with his claims against these Defendants, he may do so by filing a new civil action or actions.

## III. Plaintiff's Pending Motions

### A. Request for the Appointment of Counsel

In Plaintiff's complaint, he requests the appointment of counsel. (ECF No. 1, PageID.4.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney.

11

*Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel, at this time, is not necessary to the proper presentation of Plaintiff's position. Therefore, Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.4) will be denied at this time.

### B.     Motion for a Preliminary Injunction

After filing his complaint, Plaintiff filed a motion for a preliminary injunction. (ECF No. 5.) Preliminary injunctions and temporary restraining orders are some of "the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citation omitted). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th

12

Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met.").

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Although the Court makes no final determination on this issue, it is not at all clear from Plaintiff's *pro se* complaint that Plaintiff has a substantial likelihood of success on his claims. Accordingly, Plaintiff's motion for preliminary injunction (ECF No. 5) will be denied without prejudice.

### C.      Motion to Supplement

In Plaintiff's motion to supplement, he requests leave of Court to file an affidavit from another inmate who witnessed "the events giving rise to the allegations against [Defendant] Weller [and Defendant] Nalley." (ECF No. 6, PageID.109.) Plaintiff states that the affidavit "was not available at the time of the initial filing of the complaint." (*Id.*) Upon review of Plaintiff's motion to supplement (ECF No. 6), the Court will grant the motion. The affidavit that Plaintiff submitted with his motion will be ordered filed.

## IV.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In this action, Plaintiff alleges that Defendants Weller and Nalley violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff also alleges that Defendants Weller and Nalley engaged in a civil conspiracy under § 1983 and violated Plaintiff's rights under the Americans with Disabilities Act (ADA).

## A. Official Capacity Claims

With respect to Plaintiff's § 1983 official capacity claims against Defendants Weller and Nalley, as explained below, these claims will be dismissed.

14

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's § 1983 claims for monetary damages against Defendants Weller and Nalley in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (citation omitted). Here, Plaintiff has been released from incarceration. The Sixth Circuit has held that transfer to another correctional facility or release from incarceration moots a prisoner's injunctive and declaratory claims. *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Therefore, Plaintiff cannot maintain his § 1983 claims for injunctive and declaratory relief against Defendants Weller and Nalley, and the Court will dismiss these claims.

15

Accordingly, for these reasons, Plaintiff's § 1983 claims against Defendants Weller and Nalley in their official capacities will be dismissed.

**B.      First Amendment Retaliation**

Plaintiff alleges that Defendants Weller and Nalley violated his First Amendment rights by retaliating against him. (*See* Compl., ECF No. 1, PageID.12–15.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citation omitted).

**1.      Protected Conduct**

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512,

521 (6th Cir. 2010) (quoting *Pearson*, 471 F.3d at 741) (finding that a conversation constituted protected petitioning activity).

Here, Plaintiff alleges that he had made at least one oral complaint about his concerns for his safety in light of the threats and a physical attack by his cellmate, inmate Johnson. Plaintiff also references filing grievances and civil actions. These actions constitute protected activity. Therefore, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has stated the first element of a First Amendment retaliation claim.

### 2.    Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Here, Plaintiff alleges that Defendant Weller issued him "false" misconduct tickets for stealing chicken from the dining hall, disobeying a direct order, and for possessing dangerous contraband. Additionally, Plaintiff alleges that Defendant Nalley confiscated Plaintiff's religious and personal property.

The Sixth Circuit has held that the "seizure of an inmate's legal documents" may constitute adverse action. *Id.* at 604–05 (citations omitted). Further, the issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere

potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."). With respect to the misconduct ticket for disobeying a direct order, although Plaintiff does not dispute that he refused to lockdown with his cellmate—disobeying the direct order at issue—Plaintiff contends that the order was "unlawful" because he had just advised Defendant Weller that his cellmate had physically assaulted him and threatened him. Under these circumstances, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has sufficiently alleged the second element of a retaliation claim.

### 3. Retaliatory Motive

#### a. Defendant Nalley

With respect to Defendant Nalley, Plaintiff alleges in a conclusory manner that Defendant Nalley confiscated Plaintiff's legal and personal property "out of retaliation for complaints/grievances that [Plaintiff] previously levied against him." (Compl., ECF No. 1, PageID.14.)

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, although Plaintiff alleges that he had filed complaints and grievances against Defendant Nalley before Defendant Nalley took an adverse action against Plaintiff—suggesting temporal proximity—Plaintiff fails to allege any facts about *when* he in fact filed these prior complaints and grievances against Defendant Nalley. Instead, Plaintiff merely alleges the ultimate fact of retaliation. Plaintiff alleges no facts from which to reasonably infer that Defendant Nalley was motivated by any protected conduct. Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted).

Accordingly, because Plaintiff fails to allege any facts to suggest that Defendant Nalley was motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against Defendant Nalley.

### b.    Defendant Weller

With respect to Plaintiff's retaliation claim against Defendant Weller premised on Defendant Weller's issuance of a "false" misconduct ticket for stealing chicken, Plaintiff fails to allege any facts to suggest that this adverse action was temporally related to any prior protected conduct. (*See* Compl., ECF No. 1, PageID.12.) Indeed, Plaintiff fails to allege when the misconduct ticket was issued and when he engaged in protected conduct. (*See id.*) Plaintiff also fails to allege any facts to suggest that Defendant Weller was motivated by any protected conduct. Instead, Plaintiff merely alleges the ultimate fact of retaliation, which is insufficient to state a claim. *See Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial"

(internal quotation marks omitted)). Therefore, Plaintiff's retaliation claims against Defendant Weller premised on the issuance of a "false" misconduct ticket for stealing chicken will be dismissed.

With respect to Defendant Weller's issuance of "false" misconduct tickets for disobeying a direct order and possessing dangerous contraband, although Plaintiff has by no means proven retaliation, taking Plaintiff's factual allegations as true and in the light most favorable to him, the alleged circumstances surrounding the issuance of these misconduct tickets, and the temporal proximity between Plaintiff's protected conduct and the adverse actions, preclude the Court from dismissing these claims on initial review.

### C.    Eighth Amendment

Plaintiff alleges that Defendants Weller and Nalley violated his Eighth Amendment rights by failing to protect him. (*See* Compl., ECF No. 1, PageID.12–15.)

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

With respect to Defendant Weller, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to Plaintiff, the Court may not dismiss Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Weller.

With respect to Defendant Nalley, Plaintiff has failed to allege sufficient facts to show that Defendant Nalley had knowledge of any substantial risk of harm to Plaintiff from his cellmate, inmate Johnson. Specifically, although Plaintiff alleges that he advised Defendant Weller that his cellmate had just physically assaulted him and threatened him, Plaintiff does not allege that he had informed Defendant Nalley of this issue. (*See* Compl., ECF No. 1, PageID.12.) Plaintiff alleges in a conclusory manner that Defendant Nalley "was personally involved in all aspects of the aforestated allegations as described against [Defendant] Weller," however, Plaintiff fails to allege any facts to support this conclusory assertion. Further, to the extent that Plaintiff intended to claim that his Eighth Amendment rights were violated because he was later transferred to a level V facility and faced a general risk of harm at that facility, such a vague assertion of risk at a facility where Defendant Nalley did not work is insufficient to state an Eighth Amendment claim. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Therefore, Plaintiff's Eighth Amendment claim against Defendant Nalley will be dismissed.

**D.     Fourteenth Amendment Equal Protection Clause**

Plaintiff alleges that Defendants Weller and Nalley discriminated against him because of his hearing disability. Plaintiff also alleges that Defendant Weller "protected other prisoners placed in the protection unit at Oaks," but Defendant Weller "refused to protect [Plaintiff]." (Compl., ECF No. 1, PageID.13.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Disabled persons are not members of a protected class simply by virtue of their disability. *See City of Cleburne*, 473 U.S. at 445–46. Additionally, "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff alleges in a conclusory manner that Defendant Weller "discriminated against [him]" in several ways; however, Plaintiff fails to identify any other prisoners who were similarly situated, but treated differently. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without

specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, to the extent that Plaintiff intended to assert an equal protection claim in a class-of-one case, he fails to state such a claim. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Even viewing Plaintiff's equal protection claim as a class-of-one claim, Plaintiff's equal protection claims are wholly conclusory. Plaintiff fails to allege any facts to demonstrate that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, for all of the reasons set forth above, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claim.

E.        **Fourteenth Amendment Due Process Clause**

1.        **Procedural Due Process Claim**

Plaintiff suggests that his legal and personal property was improperly confiscated. (*See* Compl., ECF No. 1, PageID.14.) To the extent that Plaintiff alleges that he was deprived of property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies, which he could have accessed during his incarceration and which he continues to be able to access. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ b (eff. Dec. 12, 2013); *see* MDOC Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. MICH. COMP. LAWS. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Finally, Michigan law

authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." MICH. COMP. LAWS § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property. Accordingly, Plaintiff's procedural due process claim will be dismissed.

### 2.  Substantive Due Process Claim

Plaintiff alleges that Defendant Nalley placed Plaintiff's property "in an unsecured area without proper custody and exposed said property to the prison population . . . or as an alternate theory planted dangerous contraband (white out solution) within [Plaintiff's] footlockers and/or duffle bags." (Compl., ECF No. 1, PageID.14.) To the extent that Plaintiff claims that Defendant Nalley planted the white-out solution in Plaintiff's footlockers or duffle bags, violating Plaintiff's substantive due process rights, as explained below, he fails to state such a claim.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (citation omitted). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (citation omitted). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

In this action, Plaintiff fails to allege conduct that is sufficiently outrageous to support a substantive due process claim. As an initial matter, Plaintiff's suggestion that Defendant Nalley planted the white-out solution is simply an "alternate theory" presented by Plaintiff. Besides

Plaintiff's conclusory "alternate theory," he fails to allege any facts to support this theory. Further, with respect to the class I misconduct charge that Plaintiff received for possessing the white-out solution, a prisoner like Plaintiff, who at the time was serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major (class I) misconduct conviction. *See* MICH. COMP. LAWS § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Plaintiff's allegations therefore fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.[5]

Accordingly, for the reasons set forth above, any intended substantive due process claim will be dismissed.

### F.     Civil Conspiracy Under § 1983

Plaintiff vaguely alleges that Defendants Weller and Nalley conspired to violate his constitutional rights. (*See* Compl., ECF No. 1, PageID.14.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of

---

[5] Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's liberty interest in his misconduct proceedings; although, Plaintiff has not raised such a claim in this action.

a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Here, Plaintiff alleges in a conclusory manner that Defendants Weller and Nalley "conspired with others" to violate Plaintiff's constitutional rights. (Compl., ECF No. 1, PageID.14.) Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants Weller and Nalley, and instead, alleges that Defendants took several discrete actions against him, Plaintiff fails to state a plausible claim of conspiracy against Defendants Weller and Nalley.

G.      **First & Fourteenth Amendments Access to the Courts**

Plaintiff also vaguely alleges that Defendants Weller and Nalley interfered with his right to access the courts. (*See* Compl., ECF No. 1, PageID.14.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).

Here, Plaintiff fails to identify any litigation that was frustrated, let alone any non-frivolous litigation that was frustrated. Because Plaintiff fails to identify any pending or contemplated litigation, he necessarily fails to show an actual injury to any litigation. Accordingly, Plaintiff's access to the courts claim against Defendants Weller and Nalley will be dismissed.

H.      **ADA**

Plaintiff claims that Defendants Weller and Nalley violated his rights under the ADA—presumably Title II of the ADA, 42 U.S.C. § 12131. Specifically, Plaintiff suggests that Defendant Weller failed to accommodate Plaintiff's hearing disability by failing to provide access to "the hearing amplifier (an approved accommodation)." (Compl., ECF No. 1, PageID.13.)

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of

28

a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). Discrimination against a "qualified individual on the basis of a disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff sues Defendants Weller and Nalley in both their official and individual capacities. Any intended ADA claims against Defendants Weller and Nalley in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

Turning to the merits of Plaintiff's ADA claims, with respect to Defendant Nalley, Plaintiff fails to allege any facts to suggest that Defendant Nalley had any involvement in the alleged violations of Plaintiff's rights under the ADA. Plaintiff's ADA claim against Defendant Nalley therefore will be dismissed. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (discussing that where, a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints).

With respect to Plaintiff's ADA claim against Defendant Weller in his official capacity, the Court will dismiss Plaintiff's claim for injunctive relief because his release from incarceration moots his claim for injunctive relief. *See, e.g.*, *Kensu*, 87 F.3d at 175. As to Plaintiff's ADA claim against Defendant Weller in his official capacity for monetary damages, at this stage of the proceedings, the Court may not dismiss this claim.

## I.       State Law Claims

In addition to Plaintiff's federal claims, Plaintiff claims that Defendants Weller and Nalley subjected Plaintiff "to the intentional infliction of emotional distress." (Compl., ECF No. 1, PageID.14–15.)

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants Weller and Nalley violated state law fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."

*Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

As to Defendant Nalley, because the Court will dismiss all of Plaintiff's federal claims against Defendant Nalley, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claim against Defendant Nalley. Plaintiff's state law claim against Defendant Nalley therefore will be dismissed without prejudice. Because Plaintiff continues to have pending federal claims against Defendant Weller, the Court will exercise supplemental jurisdiction over his state law claim against Defendant Weller.

## Conclusion

The Court will deny without prejudice Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.4) and motion for preliminary injunction (ECF No. 5). The Court will grant Plaintiff's motion to supplement (ECF No. 6).

Further, pursuant to Rule 21 of the Federal Rules of Civil Procedure, the Court will drop as misjoined all named Defendants *except* Defendants Weller and Nalley. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice. The Court will also dismiss Defendant Nalley, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c), for failure to state a claim. Further, the Court will dismiss, for failure to state a claim, the following claims against remaining Defendant Weller: Plaintiff's (i) retaliation claim premised on Defendant Weller's issuance of a "false" misconduct ticket for stealing chicken, (ii) equal protection claim, (iii) access to the courts claim, (iv) § 1983 conspiracy claim, (v) procedural and substantive due process claims, (vi) § 1983 official capacity claims, and (vii) individual capacity claim, and official capacity claim for injunctive relief under the ADA. The following § 1983 claims against Defendant Weller in his individual capacity remain in the case: Plaintiff's First Amendment retaliation claims

premised on Defendant Weller's issuance of "false" misconduct tickets for disobeying a direct order and possessing dangerous contraband and Plaintiff's Eighth Amendment failure-to-protect claim. Additionally, Plaintiff's state law claim and claim for monetary damages against Defendant Weller in his official capacity under the ADA remain in the case.

An order consistent with this opinion will be entered.

Dated:   January 3, 2023                              /s/ Jane M. Beckering
                                                                          Jane M. Beckering
                                                                          United States District Judge